UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. BRUINSMA, Trustee,

            Appellant,                        File No.  1:04-CV-506
                                             File No.  1:04-CV-726

v.                                          (Bankr. Adv. Pro. No. 03-88265)

NEW EQUIPMENT LEASING, INC.,           HON. ROBERT HOLMES BELL

            Appellee.

_____/

## **O P I N I O N**

The Trustee for the estate in a Chapter 7 bankruptcy proceeding appeals the bankruptcy court's judgment on the merits and its imposition of sanctions in an adversary proceeding filed by the Trustee.  The defendant has filed a cross-appeal.

## **I.**

On April 18, 2001, Thomas N. Pare, Jr. ("Debtor") filed a voluntary petition for Chapter 7 bankruptcy.  *In re Pare*, Case No. HG 01-04211 ("Estate").  Thomas A. Bruinsma ("Trustee") was appointed Trustee of the Estate.  On April 17, 2003, the Trustee filed an adversary proceeding against New Equipment Leasing, Inc. ("New Equipment"), alleging that New Equipment was the recipient of avoidable transfers.

The Debtor, Dr. Pare, was a dentist.  When Debtor filed his bankruptcy petition he had accounts receivable stemming from his sale of dental practices in Otsego and Three Rivers.

Those accounts receivable were the subject of the adversary proceeding against New Equipment.

Count I of the Trustee's complaint in the adversary proceeding alleged that New Equipment was the recipient of preferential transfers that were avoidable pursuant to 11 U.S.C. § 547(b). Count II alleged that New Equipment was the recipient of unauthorized post-petition transfers that were avoidable pursuant to 11 U.S.C. § 549. *Bruinsma v. New Equipment Leasing*, Bankr. Adv. Pro. No. 03-88265 (Bankr. W.D. Mich.). The Trustee's amended complaint, filed on January 13, 2004, and authorized by the bankruptcy court on January 20, 2004, identified the allegedly avoidable transfers as 23 payments in the amount of $535.71 from Robert P. Rocco, D.D.S., P.C. to Visser & Bolhouse, New Equipment's attorneys, and a payment from Dr. Roland Hagendorff to Dr. Pare in the amount of $13,000 which was offset by New Equipment.

The trial on the adversary proceeding was held on January 20, 2004. At the conclusion of the trial, the bankruptcy court requested post-trial briefing on two additional legal issues not raised in the amended complaint. In its oral opinion on June 14, 2004, and written order dated June 17, 2004, the bankruptcy court dismissed Count I of the adversary proceeding, permitted amendment of the pleadings to add a third-party beneficiary claim, and entered judgment in favor of New Equipment on Count II and on the added third-party beneficiary claim. The bankruptcy court also awarded New Equipment its reasonable attorney fees as a sanction against the Trustee. On September 14, 2004, the bankruptcy court entered an amended judgment awarding New Equipment sanctions in the amount of

$10,327.31. The Trustee has appealed the judgment as to Count II,[1] and the added third-party beneficiary claim, and the award of sanctions. New Equipment has filed a cross-appeal.

## II.

This Court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo*. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). Mixed questions of law and fact are separated into their component parts and reviewed under the applicable standard. *Id.* The bankruptcy court's equitable determinations are reviewed for an abuse of discretion. *Id.*

"A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1027 (6th Cir. 2001) (quoting *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996)). Under this standard, a reviewing court may not reverse a trial court's findings of fact "merely because it would have reached a different conclusion." *Duddy v. Kitchen & Bath Distribs., Inc. (In re H.J. Scheirich Co.)*, 982 F.2d 945, 949 (6th Cir. 1993). "Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 857 (6th Cir. 1988).

---

[1]Count I was dismissed pursuant to the parties' agreement and is not at issue on appeal.

### III.

The Trustee's first two issues on appeal concern payments by Rocco PC to New Equipment's attorneys, Visser & Bolhouse P.C.

In 1996 Debtor and his partner, Dr. Horton, sold their interest in Otsego Dental Associates, P.C., to Robert P. Rocco, D.D.S., P.C. ("Rocco PC").  Under the terms of the purchase agreement, Rocco PC agreed to pay the Debtor $535.71 per month for 84 months for a covenant not to compete.  Prior to the date of the Debtor's bankruptcy petition, New Equipment obtained a judgment against Debtor and Otsego Dental Associates.  Prior to the bankruptcy, New Equipment filed a garnishment against Dr. Rocco individually. Rocco PC was not named as a garnishee defendant.  Although the garnishment was against Dr. Rocco individually, Dr. Rocco directed Rocco PC to make monthly payments in the amount of $535.71 to New Equipment's attorney's, Visser & Bolhouse, P.C.  Rocco PC made these monthly payments otherwise owing to Debtor on the noncompete agreement to Visser & Bolhouse under the mistaken belief that it was obligated to do so under the writ of garnishment.   Rocco PC continued to make the monthly payments to Visser & Bolhouse after the bankruptcy was filed and after the writ of garnishment expired in May 2001.[2] Visser & Bolhouse did not issue any further writs of garnishment after the Debtor filed bankruptcy.  Visser & Bolhouse did, however, accept the payments from Rocco PC and

---

[2]The May 17, 2001, payment was written before the writ of garnishment expired.  All other checks were written after the writ of garnishment expired.

transferred those payments to New Equipment.  New Equipment credited the payments against the amount Debtor owed to New Equipment under the state court judgment.

Although the Trustee was on notice of Debtor's accounts receivable, the Trustee did not contact Dr. Rocco to tell him to stop making the payments to New Equipment until after the March 12, 2003 payment.  Rocco PC immediately stopped making payments to New Equipment.  However, during the two years before it was contacted by the Trustee, Rocco PC had written 22 checks to New Equipment's attorneys for a total of $11,785.62.

Because the April 10, 2001, check did not clear Rocco PC's account until April 18, 2001, the day after the bankruptcy petition was filed, it was agreed at trial that there were no pre-petition transfers.  Accordingly, Count I, which sought the recovery of pre-petition transfers was dismissed.  The Trustee has not appealed the dismissal of Count I.

**A.  Did Payments By Rocco PC constitute property of the bankruptcy estate?**

The first issue raised by the Trustee is whether the monthly payments by Rocco PC to Visser & Bolthouse constituted property of the bankruptcy estate.  The bankruptcy court broke this down into two discrete issues.  First, the bankruptcy court considered whether the account receivables constituted property of the estate. The bankruptcy court agreed with the Trustee that they did.  The bankruptcy court then considered whether the transfers by Rocco PC to Visser & Bolhouse constituted a transfer of property of the estate.  The bankruptcy court held that they did not.

The majority of the Trustee's argument on appeal is devoted to the contention that the obligation to make payments pursuant to the covenant not to compete was the property of the estate. This is a non-issue. The bankruptcy court agreed with the Trustee on this point. The Trustee then assumes that because Rocco PC's obligation to pay for the covenant not to compete was the property of the estate, the payments made by Rocco PC to New Equipment were transfers of property of the estate.

The bankruptcy court held that they were not. In reaching this determination the bankruptcy court noted that the payments from Rocco PC to Visser & Bolhouse were made on the mistaken belief that Rocco PC was a garnishee defendant when, in fact, the garnishment was only directed at Dr. Rocco, and the only garnishee defendant was Dr. Rocco. Rocco PC also made the mistake of continuing to make payments to Visser & Bolhouse long after the garnishment expired. Rocco PC's mistaken payments to Visser & Bolhouse, however, do not relieve it from its obligation to pay Rocco PC's valid obligation to the Debtor. Because Rocco PC was under no legal obligation to make the payments, the Estate's property interests, i.e., the contractual right to receive payments from Rocco PC, remains unchanged from what it was at the inception of the bankruptcy. The Estate's right to payment from Rocco PC has not been impaired. The Estate, as a successor in interest to Debtor's contractual right against Rocco PC, still has the right to collect from Rocco PC whatever was owed Debtor by Rocco PC as of the commencement of Debtor's bankruptcy proceeding. Accordingly, the

6

bankruptcy court held that there had been no "transfer" of the bankruptcy estate's property rights in the covenant not to compete for purposes of Section 549.

This is the heart of the bankruptcy court's opinion with respect to the Rocco PC payments. The Trustee's response to this finding is to assert that the payments by Rocco PC were "proceeds" of the property of the Estate. There is no question that property comprising the bankruptcy estate includes "**Proceeds**, product, offspring, rents, or profits **of or from property of the estate**, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6) (emphasis added). The Trustee has not shown, however, that the payments constituted proceeds "of or from property of the estate."

The Trustee has not challenged the bankruptcy court's factual findings that the payments from Rocco PC to New Equipment were not made pursuant to a garnishment, but were in fact made on the mistaken belief that Rocco PC was a garnishee defendant and on the mistaken belief that the garnishment continued. Neither has the Trustee challenged the bankruptcy court's factual finding that the payments by Rocco PC to New Equipment did not impair the Estate's contractual right to receive payments from Rocco PC. The Trustee provided no evidence that its account receivable from Rocco PC was impaired by Rocco PC's payments to New Equipment. Neither has the Trustee provided any legal support for such a claim. This Court is satisfied that the bankruptcy court correctly distinguished the contractual obligation owed to the Estate under the covenant not to compete from the payments

mistakenly made by Rocco PC to New Equipment.  The payments by Rocco PC did not diminish the amount owing to the estate for the covenant not to compete.

Because the payments from Rocco PC to New Equipment did not impair the Estate's interest in the account receivable, the bankruptcy court concluded that the Trustee "failed to establish that there has been a post-petition transfer of the bankruptcy estate's contractual right to receive these payments. . ." (Op. Tr. at 15).  Upon de *novo* review of this legal conclusion, this Court is satisfied that the bankruptcy court correctly concluded that the payments did not constitute transfers of the estate's property.  Accordingly, the Court affirms the bankruptcy court's dismissal of the Trustee's claim that Rocco PC's payments to New Equipment were avoidable under 11 U.S.C. § 549 as unauthorized post-petition transfers.

## B.  Automatic Stay

The second issue the Trustee raises on appeal with respect to the account receivable from Rocco PC is as follows:

> If the payments by Dr. Robert Rocco, D.D.S., P.C. constituted property of the bankruptcy estate, did the post-petition receipt and retention by the defendant and the defendant's law firm constitute impermissible violations of the automatic stay?

This issue, as phrased by the Trustee, is conditioned on a finding that the payments constituted property of the bankruptcy estate.  In light of this Court's determination above that the bankruptcy court was correct in its conclusion that the monthly payments did not constitute the transfer of property of the estate, there is no need for the Court to consider

8

whether the post-petition receipt and retention by New Equipment and its law firm constituted impermissible violations of the automatic stay.

In addition, the substantive issue regarding the automatic stay is not properly before this Court. At the conclusion of the trial, the bankruptcy court requested the parties to brief an issue not raised in the pleadings, i.e., whether Visser & Bolhouse or New Equipment violated the automatic stay by accepting Rocco PC's payments on account of the covenant not to compete. The bankruptcy court ultimately determined that it was unnecessary to decide whether the Trustee should be allowed to amend his pleadings to include a cause of action based on a violation of the automatic stay because the "trustee did not establish at trial a violation of the automatic stay even if he were permitted to amend his pleadings to add this alternative count at this late date." (Op. Tr. at 19).[3] The Trustee has not alleged that the bankruptcy court erred in denying the Trustee an opportunity to amend the complaint at the close of the trial to add this new claim. Because the Trustee has not challenged the bankruptcy court's decision not to allow amendment of the complaint to add this claim, this claim has not been preserved for this Court's review.

Finally, even if the issue of amending the complaint were properly before this Court, the Court is satisfied that the bankruptcy court was correct in its conclusion that any claim under the automatic stay would have been futile. A court's denial of leave to amend is generally reviewed for abuse of discretion, except in cases where the court bases its decision

_____

[3]References to the transcript of the oral opinion will be cited as (Op. Tr. at —).

on the legal conclusion that an amended complaint could not withstand a motion to dismiss. *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 671 (6th Cir. 2003) (citing *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). "[A] district court's denial of leave to amend on the ground of futility is reviewed de novo." *Id.* (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001)).

The Court is satisfied that a claim based upon violation of the automatic stay would have been futile for three reasons. First, the filing of a bankruptcy petition creates "a broad automatic stay protecting the property of the debtor." *Smith v. First America Bank, N.A. (In re Smith)*, 876 F.2d 524, 525 (6th Cir. 1989) (citing 11 U.S.C. § 362(a)). As noted above, the payments at issue did not involve estate property, so the automatic stay provisions did not come into play.

Second, even if the payments constituted property of the Estate, the case law does not support the Trustee's assertion that New Equipment or its attorneys violated the automatic stay. Although there is authority to support the Trustee's assertion that the post-petition acceptance of funds pursuant to a pre-petition garnishment violates the automatic stay, the cases Trustee relies on were all premised on the recipient's affirmative actions to continue collection efforts after the bankruptcy petition was filed, or on its failure to stop payments that were being made pursuant to valid legal process. *See, e.g., In re McCall-Pruitt*, 281 B.R. 910, 911 (Bankr. E.D. Mich. 2002) (creditor's failure to halt garnishment against debtor's funds held by State violated automatic stay); *In re Banks*, 253 B.R. 25, 31-32 (Bankr. E.D. Mich.

10

2000) (creditor violated automatic stay by failing to vacate writ of restitution and allowing continuation of eviction process); *In re Sams (Ledford v. Tiedge)*, 106 B.R. 485, 489-90 (Bankr S.D. Ohio 1989) (creditor who filed foreclosure action against debtor prior to bankruptcy violated automatic stay by failing to take steps to stop sale of debtor's property after bankruptcy petition was filed); *In re O'Connor (O'Connor v. Methodist Hosp.)*, 42 B.R. 390, 392 (Bankr. E.D. Ark. 1984) (creditor violated automatic stay by proceeding to obtain default judgment after bankruptcy filed).

All of the cases cited by the Trustee are distinguishable because they involved the active or passive continuation of a prior legal process against the debtor or its property. Unlike the facts in the cited cases, there was no prior legal process against the entity that made the payments in this case. Rocco PC was not obligated to pay New Equipment or its attorneys under a valid writ of garnishment. Rocco PC made the payments under a mistaken belief that they were due rather than pursuant to a valid garnishment. The payments made by Rocco PC were all made at Rocco PC's own risk that they would not satisfy Rocco PC's obligations to the Debtor. The Trustee has cited no cases that would suggest that the receipt of such payments constitutes a violation of the automatic stay.

Third, as the bankruptcy court noted, there was no evidence that New Equipment or its attorneys actively misled Dr. Rocco into believing he was required to continue making payments to them. In fact, there is no evidence of any post-petition effort by New Equipment or its attorneys to obtain the payments from Rocco PC. In the absence of deception, the

11

bankruptcy court held that New Equipment could not be held accountable for the mistake made by Rocco PC. The Trustee has not shown that this conclusion was factually or legally incorrect. The bankruptcy court's denial of the Trustee's delayed attempt to state a claim of a violation of the automatic stay will accordingly be affirmed.

## IV.

The Trustee's next three issues on appeal concern a pre-petition obligation owed by Dr. Hagendorff to the Debtor. In 1996 Debtor and his partner, Dr. Horton, sold all of their shares in Three Rivers Dental Associates, P.C. to Dr. Roland Hagendorff, DDS. Under the terms of the purchase agreement, Dr. Hagendorff agreed to pay Debtor and Horton consideration for a covenant not to compete and consulting fees. Dr. Hagendorff pledged all of the shares he purchased as collateral for the performance of his obligations under the stock purchase agreement.

Prior to the time Debtor filed his bankruptcy petition, Dr. Hagendorff orally negotiated a reduction of the balance due to Debtor and Horton from $40,000 to $26,000. Of that $26,000, $13,000 was to be paid to Debtor, and $13,000 to Horton in return for their release of the shares Dr. Hagendorff had pledged as collateral. Simultaneously, Dr. Hagendorff arranged for New Equipment to purchase his equipment for $75,000 under a sale lease back arrangement that would enable Dr. Hagendorff to pay off his creditors.[4] Before the final lease documents were signed, Debtor filed bankruptcy.

---

[4]Under the agreement Three Rivers PC was to borrow $75,000 from New Equipment and New Equipment would disburse that money to Three Rivers PC's creditors as follows: $44,000 to pay off a secured note to National City Bank; $13,000 each to Debtor and Dr. Horton as a discounted, final settlement payment of the remaining covenant not to compete obligation; and $5,000 to Three Rivers PC for office improvements.

New Equipment paid National City Bank and Dr. Horton as agreed, but made no payment to the Debtor.  According to the testimony of Mr. Lanning, the chairman of New Equipment, it was never his intention to actually make payment to the Debtor.  Rather, it was his intention set off the $13,000 New Equipment owed Debtor against what Debtor owed New Equipment pursuant to a state court judgment.  However, after learning that Dr. Pare had filed bankruptcy Mr. Lanning testified that he did not, in fact, ever credit Dr. Pare's account with a $13,000 setoff at any time.  Instead, the $13,000 was held by New Equipment "in limbo."  (Trial Tr. at 78 & 88).[5]  Lanning testified that the $13,000 was eventually given back to Dr. Hagendorff in the settlement.  (Trial Tr. at 88).  Dr. Hagendorff disputed Lanning's contention that the $13,000 was covered in the settlement, but Dr. Hagendorff agreed that there was no continuing agreement that New Equipment would pay the $13,000, and that he was still liable to the Estate under the covenant not to compete. (Trial Tr. at 30 & 70-71).

In its amended complaint filed on the eve of trial the Trustee requested a money judgment against New Equipment for the $13,000 New Equipment was to have paid Debtor from the sale lease back proceeds as an avoidance of a post-petition transfer.

The Trustee's complaint was premised on a violation of § 549 of the Bankruptcy Code. Section 549 permits the trustee to avoid any transfer of property of the estate that occurs post-

---

[5]References to the excerpts of the transcript of the January 20, 2004, trial that were made a part of the record on appeal will be cited as (Trial Tr. at ---).

13

petition and that is not authorized.  The bankruptcy court held that the Estate's had a claim against Dr. Hagendorff was a claim arising out of contract.  The Estate's contract claim would be property of the estate, so an unauthorized transfer of the contract claim post-petition would be recoverable as an unauthorized transfer.  The bankruptcy court found, however, that there had been no unauthorized transfer of the contract claim.  The contract claim against Dr. Hagendorff still exists.  The Estate did not have a contract with New Equipment that would give rise to an unauthorized transfer claim.

After the close of the proofs, the bankruptcy court suggested that the Trustee might have a theory for recovery against New Equipment based on a third-party beneficiary contract. The parties briefed the court on the issue of a third-party beneficiary claim and the Trustee moved to amend its complaint to add this new claim.  The bankruptcy court allowed amendment of the claim to address the third-party beneficiary claim, but ultimately concluded that the third-party beneficiary claim could not succeed because any third-party contract had been negated before the third-party beneficiary made efforts to enforce the promise.

## A.  Sale/Lease-Back Arrangement

The Trustee frames the first of his issues regarding the Hagendorff account receivable as follows:

> Did the attempted payment of the remaining pre-petition obligation owed by Dr. Roland Hagendorff to the Debtor by means of a post-petition lump sum payment financed through a lease/loan transaction with the defendant, constitute property of the bankruptcy estate?

Trustee's phrasing of the issue is confusing because it asks whether an **action** (attempted payment) was **property** of the Estate.  It is also confusing because it fails to distinguish between the obligation owed by Dr. Hagendorff to the Debtor from the obligation, if any, owed by New Equipment to the Debtor.

The Trustee's complaint alleged an unauthorized transfer of Estate property by New Equipment.  The obligation, however, was owed by Dr. Hagendorff, not by New Equipment.  As the bankruptcy court explained, because there was no contract between New Equipment and the Debtor, there could be no transfer of property claim against New Equipment unless it arose pursuant to a third-party beneficiary claim.

The majority of the Trustee's brief with respect to this argument is devoted to the proposition that Dr. Pare was a third-party beneficiary of the contract between Dr. Hagendorff and New Equipment.  This is a non-issue.  The bankruptcy court agreed with the Trustee on this point.  Under Michigan law, "[a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."  M.C.L. § 600.1405(1).  As noted in the bankruptcy court's opinion:

> [T]he proofs overwhelmingly support a finding that there was at one time an obligation by New Equipment Leasing to pay $13,000 to debtor in connection with the sale lease back arrangement between New Equipment Leasing and the Three Rivers professional corporation and that debtor and then the bankruptcy estate, as debtor's successor in interest, had a right to enforce that obligation.

(Op. Tr. at 37).

15

Unfortunately, the Trustee devotes a large portion of its appellate brief to challenging the arguments raised by New Equipment at trial rather than focusing on errors in the bankruptcy court's opinion. When the Trustee finally does identify the bankruptcy court's error, he states that the bankruptcy court erred "in holding that the Trustee was unable to enforce a contractual claim based on the original complaint having failed to assert such a claim when, by the definition of property of the estate, the Trustee had the legal ability to enforce the contractual claim for payments still owed to the Debtor under the Covenant Not-To-Compete with Dr. Hagendorff's corporation." (Br. for Appellant, Docket # 7, at 20). Here again the Trustee mixes the Debtor's contractual right to receive payments under the covenant not to compete with the Debtor's right to receive payment under the third-party beneficiary contract.

The bankruptcy court did not preclude the Trustee from attempting to enforce the contractual claim for payments owed under the covenant not to compete. The bankruptcy court agreed that there was a pre-petition obligation owed by Dr. Hagendorff and that the obligation was property of the Estate. The Trustee's claim, however, was not brought against Dr. Hagendorff. It was brought against New Equipment.

Neither did the bankruptcy court preclude the Trustee from raising a third-party beneficiary claim. In fact, the bankruptcy court specifically allowed the post-trial amendment of the complaint to add this claim. (Op. Tr. at 36-37, 48). The bankruptcy court held that the Trustee did not have a claim against New Equipment under § 549 for unauthorized transfer.

16

(Op. Tr. at 32-33). The Trustee's claim against New Equipment, if any, was a claim under a third-party beneficiary contract theory that New Equipment failed to perform the promise it made to Dr. Hagendorff. (Op. Tr. at 33). The Trustee has not challenged this legal finding on appeal.

The bankruptcy court acknowledged that there might still be a dispute between Dr. Hagendorff and New Equipment as to whether New Equipment still owed Dr. Hagendorff $13,000. (Op. Tr. at 39-40). The bankruptcy court did find, however, that Dr. Hagendorff and New Equipment were in agreement that New Equipment was no longer required to pay $13,000 to Debtor on Dr. Hagendorff's behalf. (Op. Tr. at 40). Although the evidence on this point was somewhat equivocal, and although another court may have come to a different conclusion, this Court concludes that the bankruptcy court's finding of fact on this point was supported by the testimony of Mr. Lanning and is not clearly erroneous.

## B. Post-Petition Setoff

The Trustee's second issue relating to the Dr. Hagendorff account receivable is stated as follows:

> If the attempted payment by Dr. Hagendorff constituted property of this bankruptcy estate, did the Defendants' post-petition setoff against that amount of a pre-petition judgment constitute an impermissible violation of the automatic stay?

The Trustee contends that the bankruptcy court erred as a matter of law in not holding that New Equipment's admitted setoff was an actionable violation of the automatic stay.

17

The Trustee's argument assumes that New Equipment setoff the $13,000 it agreed to pay Dr. Pare under the loan/lease back agreement against its pre-petition state court judgment against Dr. Pare. The bankruptcy court found that it was unclear from the record as to whether New Equipment ever attempted to exercise its setoff rights with respect to the $13,000 it was to disburse to Debtor pursuant to the sale lease back arrangement. (Op. Tr. at 27). That finding was not clearly erroneous. Mr. Lanning testified that they held the $13,000 in limbo when they learned that Debtor had filed bankruptcy. The bankruptcy court further held, however, that the question of a setoff in violation of § 553 would only come into play if the Trustee had an enforceable contract claim against New Equipment. (Op. Tr. at 34). "The bankruptcy court held that "if New Equipment Leasing can defend successfully on the contract claim itself, then its affirmative defense of setoff becomes irrelevant." (Op. Tr. at 34). The Trustee has not challenged this legal conclusion. The bankruptcy court then determined that the third-party contract had been negated before the Trustee took any legal steps to enforce the obligation. (Op. Tr. at 37). Accordingly, under the bankruptcy court's reasoning, because the Estate did not have an enforceable third-party beneficiary contract claim against New Equipment, New Equipment's setoff, if it took one, was irrelevant. The Trustee has not challenged this conclusion either. The Trustee has failed to show that the bankruptcy court's findings of fact or its legal conclusions with respect to any setoff were in error. Accordingly, the bankruptcy court's findings regarding the setoff will be affirmed.

**C.  Revocation of Third-Party Beneficiary Contract**

The Trustee's third argument with respect to the $13,000 is that the bankruptcy court erred in holding that any third-party beneficiary contract had been revoked.

Michigan law with respect to third-party beneficiary contracts provides:

> If the promisee is indebted or otherwise obligated to the person for whose benefit the promise was made and the promise in question is intended when performed to discharge that debt or obligation, then the promisor and the promisee may, by mutual agreement, divest said person of his rights, if this is done without intent to hinder, delay or defraud said person in the collection or enforcement of the said debt or other obligation which the promisee owes him and before he has taken any legal steps to enforce said promise made for his benefit.

M.C.L. § 600.1405(2)(c).

The bankruptcy court held that the proofs overwhelmingly supported a finding that there was at one time a third-party beneficiary contract between New Equipment and Dr. Hagendorff that was made for the benefit of the Debtor.  (Op. Tr. at 37).  The bankruptcy court determined, however, that the contract was revoked before debtor or the Trustee took any legal steps to enforce the promise.  (Op. Tr. at 46).

In support of this finding the bankruptcy court noted that there had been a default in the sale lease back arrangement between New Equipment and Three Rivers PC., that New Equipment obtained a judgment against Three Rivers PC, and that the judgment was reduced pursuant to a settlement negotiated between New Equipment and Three Rivers PC in July 2003.  (Op. Tr. at 37-38).  The bankruptcy court found that the evidence was unclear as to whether the $13,000 that was originally to have been paid to Debtor was included in the

19

settlement or whether Dr. Hagendorff still has a claim for that amount against New Equipment.  However, the bankruptcy court found that the parties did agree that New Equipment was no longer required to disburse $13,000 to Debtor as had originally been agreed.  (Op. Tr. 38-39).

Although this settlement agreement was reached after the filing of the adversary proceeding, the bankruptcy court held that the filing of the adversary proceeding was not sufficient to put New Equipment on notice that the $13,000 was at issue because the complaint made no reference to New Equipment's promise to disburse $13,000 to Debtor on Three Rivers' behalf, let alone the Trustee's intention to enforce that promise.  (Op. Tr. at 40-42).  The first time the Trustee mentioned the $13,000 was in his amended complaint filed on January 13, 2004, after New Equipment and Three Rivers had already revoked the third-party beneficiary contract.  (Op. Tr. at 45).  The bankruptcy court concluded that the Trustee had not taken any legal steps to enforce New Equipment's promise when New Equipment was released of its obligation to perform that promise by the settlement reached between Dr. Hagendorff and Three Rivers in July of 2003.  (Op. Tr. at 46).

The Trustee does not challenge the bankruptcy court's finding that the filing of the adversary proceeding was not sufficient to constitute "legal steps to enforce said promise made for his benefit."  Instead, the Trustee contends that there was no credible evidence to establish that two of the other required conditions under M.C.L. § 600.1405(2)(c) were met, specifically, that the decision to revoke the agreement be by the mutual agreement of the

parties and that the decision be made without any intent to hinder, delay or defraud the ability of the third-party beneficiary to collect on that promise.

The bankruptcy court made findings on both of these issues.  It found that the parties had agreed to revoke the third-party beneficiary contract.  This finding is supported by the evidence.  Mr. Lanning testified that a return of the $13,000 was incorporated into New Equipment's settlement with Dr. Hagendorff.  (Trial Tr. at 88-89).  Although Dr. Hagendorff's testimony on this issue was more equivocal, he did testify that after the negotiated settlement there was no continuing obligation on the part of New Equipment to pay the indebtedness to Dr. Pare.  (Trial Tr. at 69-70).  Although the Trustee points to evidence that prior to trial New Equipment's attorneys represented that the $13,000 it owed to Debtor had been offset against New Equipment's judgment against Debtor, this evidence does not render the bankruptcy court's finding that there was a mutual agreement to revoke the agreement clearly erroneous.

The bankruptcy court also found no evidence that Dr. Hagendorff and New Equipment agreed to release New Equipment from its promise in an effort to hinder, delay or defraud the bankruptcy estate from its ability to enforce its rights to collect the obligation Three Rivers still owes to the bankruptcy estate for the covenant not to compete.  The bankruptcy court found that the reasons given by Dr. Hagendorff and Mr. Lanning with respect to their settlement were bona fide reasons for changing the promise and did not evidence any intent to defraud the Trustee or otherwise hinder or delay the Trustee's collection of what is owed

by Three Rivers or Dr. Hagendorff to the Estate on account of the consulting agreement and the covenant not to compete. (Op. Tr. at 46-47). These factual findings depend in large part on credibility determinations and are entitled to deference. This Court is satisfied that these factual findings are supported by evidence in the record and are not clearly erroneous.

The bankruptcy court's legal conclusion that the third-party beneficiary contract was revoked is supported by factual findings on all of the requisite elements under M.C.L. § 600.1405(2)(c). Accordingly, this determination must be affirmed.

## V.

The Court turns to the Trustee's motion to dismiss New Equipment's cross-appeal as untimely. In its cross-appeal New Equipment challenges the bankruptcy court's order allowing amendment of the complaint and the addition of new theories after the close of proofs, its failure to dismiss the case for failure to comply with pretrial orders, its failure to award attorney fees in accordance with its first pretrial order, and its failure to grant New Equipment's motion for dismissal at the close of the Trustee's proofs.

Three of the four rulings challenged in New Equipment's cross-appeal are rendered moot by this Court's determination above that the bankruptcy court's judgment in favor of New Equipment in the adversary proceeding should be affirmed. The only ruling that is not rendered moot by this opinion is the bankruptcy court's ruling with respect to sanctions.

The Bankruptcy Rules provide that if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of

appeal was filed.  BANKR. R. 8002(a).  The bankruptcy court judgment was signed on June 17, 2004.  The Trustee filed his notice of appeal on June 25, 2004.  New Equipment filed its cross-appeal on July 14, 2004.  New Equipment acknowledges that its cross-appeal was not filed within 10 days of the appeal.  New Equipment did not make a request to the bankruptcy court to extend the time for filing the notice of appeal.  *See* BANKR R. 8002(c).  However, New Equipment suggests that its filing was not late because an amended judgment was entered on September 14, 2004, or, in the alternative, that the late filing should be excused because neither the Trustee[6] nor the bankruptcy clerk served a Notice of Appeal on New Equipment or its counsel as anticipated by Rules 7005, 8004 and 8008(b).[7]

The Court agrees that New Equipment's cross appeal is untimely.  The amended judgment does not excuse the late filing because its entry was not preceded by one of the motions identified in Bankruptcy Rule 8002(b).  Furthermore, the amended judgment merely included a liquidated amount of sanctions and did not alter or affect any of the issues raised in the underlying appeal or cross-appeal.  Assuming New Equipment was not served with a notice of appeal, New Equipment does not deny that it was served with a copy of the Clerk's Notice Regarding Record on Appeal.  That notice, which was served on June 28, 2004, was

---

[6]The Trustee disputes New Equipment's representation that it was not served with a copy of the Trustee's Notice of Appeal.  However, resolution of this issue is not essential to this Court's analysis.

[7]Rule 8008(b) requires the service of all papers not required to be served by the clerk of the **district court** or the clerk of the **bankruptcy appellate panel**.  This rule does not exempt a party from serving papers required to be served by the **bankruptcy clerk** as in Rule 8004.

sufficient to alert New Equipment to the filing of the appeal.  Even if the Court measures the time for filing the cross-appeal from July 1, 2004 (June 28, 2004, plus an additional 3 days for service by mail pursuant to Bankr R. 9006(f)), New Equipment's cross-appeal would still be untimely.

Cases have routinely held that the time limits in Rule 8002 must be strictly construed and that failure to timely file is a jurisdictional requirement that precludes a district court from reaching the merits.  *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 430 (6th Cir. 2003) (noting that Rule 8002 conforms to FED. R. APP. P. 4 "and it is similarly interpreted as a jurisdictional requirement."); *Walker v. Bank of Cadiz (In re LBL Sports Center, Inc.)*, 684 F. 2d 410, 412 (6th Cir. 1982) (noting that courts have "uniformly held that a district court lacks jurisdiction over an appeal that is not timely filed pursuant to Rule 802(a) [predecessor to Rule 8002]."); *In re Dow Corning Corp.*, 255 B.R. 445, 465-66 (E.D. Mich. 2000) ("The rule has been strictly construed, requiring strict compliance with its terms.").  Because New Equipment's cross-appeal is untimely, this Court lacks jurisdiction to review its challenges to the bankruptcy court's judgment.  Accordingly, New Equipment's cross-appeal will be dismissed for lack of jurisdiction.

Even if this Court did not dismiss the cross-appeal, the bankruptcy court's decision on sanctions would be reviewed for abuse of discretion.  *See Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) (holding that bankruptcy court's decision with respect to sanctions is reviewed for abuse of discretion).  The bankruptcy court

24

clearly articulated the basis for its decision to measure the attorney fee sanctions from November 6, 2003, rather than from July 22, 2003. (Op. Tr. at 50-53). New Equipment has not shown that the bankruptcy court abused its discretion by limiting the time period covered by the attorney fee sanctions.

## VI.

Mr. Bruinsma, in his individual capacity, has filed an appeal of the bankruptcy court's September 14, 2004, amended judgment awarding $10,327.31 in sanctions against him, individually, for the attorney fees incurred by Defendant's counsel from November 7, 2003, to January 20, 2004.

This Court reviews the bankruptcy court's decision to impose sanctions and the amount of those sanctions for abuse of discretion. *Knowles Bldg. Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 199 (B.A.P. 6th Cir. 2001) (citing *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 696 n.1 (6th Cir. 1999)). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *United States ex rel. A± Homecare, Inc. v. Medshares Management Group, Inc.*, 400 F.3d 428, 450 (6th Cir. 2005) (quoting *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004)). An abuse of discretion may be found if the bankruptcy court "bases its conclusion on an erroneous version of the law or on a clearly erroneous assessment of the evidence." *Zinni*, 261 B.R. at 200 (citing *Silverman v. Mutual Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 930 (6th Cir. 1996)).

25

Although the sanctions were technically awarded for the Trustee's failure to attend the final pretrial conference, there is more to the history behind the sanctions that needs to be considered. In its First Pretrial Order dated September 9, 2003, the bankruptcy court imposed sanctions against the Trustee for his failure to initiate the court-ordered settlement conference. The bankruptcy court stated:

> Defendant has stated in its pretrial statement that the Rule 7026(f) settlement conference ordered by this Court has not taken place. It is the Trustee's responsibility as the plaintiff to initiate the ordered settlement conference. The Court sanctions Trustee for his apparent violation of its Order by awarding Defendant at the conclusion of Trial all of its costs related to this Adversary Proceeding, including reasonable attorney fees, incurred at any time after the last date set for the Rule 7026(f) settlement conference [July 22, 2003] unless Trustee successfully prosecutes all aspects of its Complaint against Defendant. That is, this sanction will be imposed against Trustee if Trustee does not receive, at the conclusion of Trial, a judgment in an amount equal to or greater than all counts pled by Trustee in its Complaint as being recoverable from Defendant.

First Pretrial Order at 3. The order provided that the Trustee could file a motion to reconsider the imposition of this sanction. *Id.* The First Pretrial Order also set the date for the Final Pretrial Conference and advised in bold print that "the Court requires each party to appear with his/her/its attorney and be prepared to negotiate in good faith the settlement of this case." *Id.* at 4. The Order warned that failure to attend would constitute grounds for awarding sanctions against the offending party. *Id.*

Mr. Bruinsma did not appear at the Final Pretrial Conference on November 6, 2003. Neither did he obtain leave of court for his failure to appear. At the Final Pretrial Conference

the bankruptcy court sanctioned the Trustee for violation of the pretrial order.[8] (Final PT Tr. at 5). The bankruptcy court sanctioned the Trustee $200 for Mr. Lanning's time to come to court. Because the Trustee was not available for settlement purposes, the court also stated that if the Trustee did not prevail at trial, he would be charged with compensating the New Equipment for its reasonable attorney's fees incurred in connection with defending the matter from the date of the final pretrial conference through trial. (Final PT Tr. at 7). The bankruptcy court observed that one of the purposes of the final pretrial conference was to encourage settlement, and if settlement could not be encouraged through this mechanism, the alternative mechanism is to add the additional disincentive of having attorney's fees charged against him if the outcome of the adversary proceeding is adverse to him. (Final PT Tr. at 7).

In its June 14, 2004, Opinion the trial court noted that the overlap in its two sanction orders raised the question of the date from which the sanctions should be measured. (Op. Tr. at 52). Although the Trustee never moved for reconsideration of the September 9, 2003, sanction order, the bankruptcy court noted that the Trustee had eventually filed a pretrial statement indicating that there had been some settlement discussions. The bankruptcy court gave the Trustee the benefit of the doubt and rescinded its September 9, 2003, sanction order. The court reaffirmed its November 6, 2003, sanction order and ordered the Trustee to pay all of New Equipment's attorney's fees incurred after November 6, 2003, in preparation for and

---

[8]References to the transcript of the November 6, 2003, final pretrial conference will be cited as (Final PT Tr. at 5).

in conducting the trial of this adversary proceeding.  The bankruptcy court also held that the Trustee may not seek reimbursement from the bankruptcy estate for the sanction.  (Op Tr. at 53).

Mr. Bruinsma contends that the sanction imposed by the bankruptcy court constitutes an abuse of discretion because: Mr. Bruinsma was not served with the first pretrial order or given notice of the sanctions or an opportunity to be heard; the amount of the sanction is excessive; and the Estate was not in violation of the pretrial order.

## A.  Notice

Mr. Bruinsma contends that he was denied due process because the sanctions were issued without notice to him and an opportunity to be heard.

The Trustee's attorney was served with a copy of the Order for Rule 7026(f) Conference and for Pretrial Statements which clearly advised the Trustee that it was his responsibility to schedule the Rule 7026(f) settlement conference.  The Trustee's attorney was also served with a copy of the First Pretrial Order which set forth the date and time of the Final Pretrial Conference and clearly advised that the Trustee was required to attend the Final Pretrial Conference.  Both orders clearly advised that failure to abide by the orders could result in the imposition of sanctions.

The Trustee's assertion that his counsel did not inform him of the contents of the bankruptcy court's orders is no defense to the imposition of sanctions.  Rule 5 of the Federal Rules of Civil Procedure applies to adversary proceedings in bankruptcy court.  BANKR. RULE

7005.  Rule 5 provides that service on a party represented by an attorney is made on the attorney.  FED. R. CIV. P. 5(b)(1).  Because the Trustee was represented by counsel, service on the Trustee was satisfied by service on his attorney.

## B.  Amount of Sanction

Mr. Bruinsma also contends that the amount of the sanction was unreasonable,[9] excessive, bore no relationship to the perceived infraction, and constituted improper fee shifting.

The sanctioned conduct in this case was the Trustee's failure to appear at the final pretrial conference.  However, it was not an isolated failure.  As the bankruptcy court noted in various statements on the record and in its written orders, the Trustee failed repeatedly to undertake the minimal actions designed to foster communication and settlement of this adversary proceeding.  The Trustee filed this case on the eve of the expiration of the statute of limitations; the Trustee's complaint lacked specificity; the Trustee failed to schedule a settlement conference; the Trustee failed to compel necessary discovery; the Trustee failed to file a timely final pretrial statement.  The list goes on.  The Trustee's failure to appear at the final pretrial conference was yet another failure in the well-established pattern of disregard for bankruptcy orders and procedures.

---

[9]It should be noted that it is the imposition of a reasonable attorney's fee as a sanction that Mr. Bruinsma contends is unreasonable rather than the amount of that fee.  In a stipulation dated August 31, 2004, the parties stipulated that $10,327.31 was a reasonable attorney fee.  (Record on Appeal, #23).

The bankruptcy court could have imposed stiffer sanctions. As the bankruptcy court noted, it could have dismissed the adversary proceeding in its entirety:

> It was certainly within my prerogative to dismiss the adversary proceeding because of trustee's failure to appear. However, I chose not to impose such a severe sanction under the circumstances. Instead, I concluded that the award of attorney's fees was sufficient to penalize the trustee for not attending what might have proven to be a fruitful meeting as well as to encourage him to make every effort to attempt a meaningful settlement discussion with defendant before trial.

(Op. Tr. at 10). The bankruptcy court could also have awarded a monetary sanction outright. Instead, it conditioned the sanction on the Trustee's failure to recover 95% of the amount sought in the complaint at trial. The bankruptcy court's hope that this sanction would foster settlement efforts, although not realized, was not an unreasonable response to the Trustee's repeated failures to crystallize its theories of recovery and to engage in dialogue with the opposing party.

At the conclusion of trial the bankruptcy court showed restraint by limiting the sanctions to a period of time measured from November 6, 2003, rather than from July 22, 2003, the date set forth in the First Pretrial Order.

The imposition of sanctions was well-considered, it was entered after multiple warnings, and it was within a reasonable range. This Court is not left with a definite and firm conviction that the trial court committed a clear error of judgment and accordingly cannot say that the sanction represents an abuse of discretion.

## C.  Lack of Justification for Sanction

The Trustee's final argument is that the sanction was imposed in violation of law. According to the Trustee, the Estate was the true plaintiff and the adversary proceeding was in reality a proceeding between the Estate and New Equipment. The Estate was properly represented by the Trustee's attorney, Jeff Moyer, at the Final Pretrial Conference. Accordingly, the Trustee contends that he had no duty to appear at the Final Pretrial Conference, so the imposition of sanctions against him for failing to appear was improper.

A trustee is the representative of the estate and has the capacity to sue and be sued.  11 U.S.C. § 323.  Mr. Bruinsma's assertion that he was not a party to the litigation but was simply the trustee is certainly peculiar in light of the fact that the adversary proceeding was brought in the name of "Thomas A. Bruinsma, Trustee."  Mr. Bruinsma was the plaintiff in the adversary proceeding and he was the individual directed to appear at the Final Pretrial Conference.  Contrary to the Trustee's arguments on appeal, the bankruptcy court's sanction against him for failing to appear was not premised upon erroneous findings of fact or incorrect conclusions of law.

For all the foregoing reasons, the bankruptcy court's judgment of June 17, 2004, and its amended judgment of September 14, 2004, will be affirmed.

An order consistent with this opinion will be entered.


Date:  _____May 5, 2005_____          /s/ Robert Holmes Bell_____
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE